# W. A. SUTTON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, September 30, 1911.

1. **REPLEVIN: Detention of Property: Right to Possession: Common Carriers.** The wrongful detention of property is the gist of a replevin action, and it will not lie where defendant has a special property in the goods, entitling him to immediate possession, such as a railroad company's right to hold goods for payment of freight.

2. **COMMON CARRIERS: Freight Charges: Carrier's Lien.** A common carrier has a lien on the goods carried, for the freight charges, and may withhold the goods until such charges are paid.

3. ——: ——: ——: **Replevin.** A shipper contracted with an agent of the initial carrier for carriage of his goods to destination on the line of a connecting carrier in another state, for a stipulated amount. The connecting carrier declined to receive the shipment from the initial carrier, for the reason the freight charged was insufficient to compensate both carriers in accordance with the tariff rates approved by the Interstate Commerce Commission. Upon being informed of this fact, the shipper surrendered his shipping contract to the agent of the connecting carrier and rebilled the shipment, receiving a credit for the balance due on the amount originally paid for through shipment. When the goods arrived at their destination, the shipper refused to pay the balance of the freight charges, and instituted an action against the connecting carrier to replevy the goods. *Held*, that the shipper was liable to the connecting carrier for the balance due on the freight charges in accordance with the contract of re-shipment, and that such carrier had a right to retain possession of the property by reason of its lien for such balance.

4. ——: ——: **Interstate Commerce.** Where a freight rate has been duly fixed by the Interstate Commerce Commission and posted by a railroad company, a lesser rate contracted for between the shipper and the company, whether intentional or through mistake, is not binding, and the company may hold the freight until the legal rate is paid.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1) The demurrer to the evidence should have been sustained: (a) Because wrongful detention is the gist of replevin. R. S. 1909, sec. 7759; Barnes v. Plessner, 137 Mo. App. 573; Grant v. Stubblefield, 138 Mo. App. 555. (b) Because the defendant had a lien on the goods for its freight charges, that is, the right to retain possession until such charges were paid, and therefore, its detention of the goods was not wrongful. Hutchinson on Carriers (2d Ed.), secs. 476 and 478-a; Am. and Eng. Ency. Law (2d Ed.), p. 399, sec. 19, p. 405, par. 7; Wells et al. v. Thomas, 27 Mo. 17; Armstrong v. Railroad, 62 Mo. App. 639; Moore v. Henry, 18 Mo. App. 1. c. 41; Glover v. Railroad, 95 Mo. App. 369; Coal & Coke Co. v. Railroad, 116 Mo. App. 1. c. 227; Gerber v. Railroad, 63 Mo. App. 145. (2) The court erred in giving instruction No. 1 on the part of the plaintiff. A contract made for an interstate shipment must be governed by the tariffs approved by the Interstate Commerce Commission, and if a rate lower than the tariff rate is quoted even by mistake, the carrier is entitled to recover such rate as has been fixed by the Interstate Commerce Commission. Gerber v. Railroad, 63 Mo. App. 145; Railroad v. Hubbell, 54 Kan. 232, 5 I. C. C. Rep. 241; Railroad v. Bundick, 94 Ga. 775, 5 I. C. C. Rep. 289; Poor Grain Co. v. Railroad, 12 I. C. C. Rep. 418.

*H. E. Doerner* for respondent.

NORTONI, J.—This is a suit in replevin for a lot of household goods. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff shipped his household goods and a cow in one car, under rating as an "emigrant outfit," from Patton, Illinois, over the Big Four Railroad, the St. Louis & Southwestern Railroad, and defend-

ant, St. Louis & San Francisco Railroad, to Steele, Missouri. The car arrived at Steele, Missouri in due time and defendant permitted plaintiff to remove the cow therefrom but retained the household goods on account of a balance of $31.20 freight charges which it asserted were unpaid. Plaintiff declined to pay this amount, because as it is said, he paid the entire freight $33.60 to the agent of the Big Four Railroad at Patton, Illinois, for the through transportation of the car to Steele, Missouri. After contending over the matter about two weeks, plaintiff instituted this suit in replevin for the household goods and prevailed at the trial. The proof is uncontradicted on both sides, and the question presented thereby is not difficult of solution, for it has several times been determined by this and other courts.

By plaintiff, it is shown that he paid the agent of the Big Four Railroad $33.60 for transportation of the car over the three railroads, the Big Four, via Cairo, Illinois, the St. Louis & Southwestern, via Lilburn, Missouri, and defendant, St. Louis & San Francisco to Steele, Missouri, but upon the car arriving at Cairo, Illinois, the St. Louis & Southwestern Railroad Company declined to receive it under this arrangement, as the freight charged was insufficient to compensate all of the carriers in accordance with the tariff rates approved by the Interstate Commerce Commission, and this was an interstate shipment. It seems a mistake had been made by the Big Four agent at Patton and that when the car reached Cairo, Illinois, all of the amount charged, save $6.80, had been consumed. Upon being informed at Cairo that the St. Louis & Southwestern Railroad would not receive the car, plaintiff surrendered his shipping contract to the agent of that road and rebilled the shipment from there over the St. Louis & Southwestern via Lilburn, Missouri, and defendant St. Louis & San Francisco line to Steele, Missouri, and on this reshipment received a credit of

$6.80, the balance to his credit on account of $33.60 paid to the Big Four agent at Patton, Illinois.

It is conclusively shown in the case that the tariff rate on such shipment, fixed and approved by the Interstate Commerce Commission and duly filed and promulgated by it and posted by defendant, is $38 per car, such as this one, from Cairo, Illinois to Steele, Missouri. On this, plaintiff was, as before said, credited $6.80, and he declined to pay the remainder of $31.20 demanded on completion of the transportation. Because of his refusal to pay this, defendant retained the goods. Replevin lies only for goods wrongfully detained. Indeed, the wrongful detention is the gist of the action and if it appears defendant has so much as a special property in the goods supporting a right to immediate possession at the time, the action must fail. [Barnes v. Plessner, 137 Mo. App. 571, 119 S. W. 457.] Every common carrier has a lien on the goods carried for his compensation and no one can doubt the right of such carrier to withhold the goods until the freight charges are paid and this lien is discharged. [Hutchinson on Carriers (3 Ed.), secs. 864, 867; Wells v. Thomas, 27 Mo. 17.] It is entirely clear that defendant rightfully detained the goods and that it was entitled to possession thereof at the time the suit was instituted, for, according to the new billing made by plaintiff at Cairo, Illinois, over the St. Louis & Southwestern Railroad and defendant railroad, which constituted a new contract of shipment, a freight charge of $38 accrued between those points, on which he received a credit of $6.80. On this contract, a balance of $31.20 was due defendant on delivery of the goods at Steele, Missouri, and until this amount was paid, defendant had a right to retain possession because of its special property in virtue of the freight lien. But it is asserted for plaintiff that, as the Big Four agent at Patton, Illinois, accepted $33.60 in full and contracted to transport the car to Steele, Missouri,

he is entitled to possession of the goods, notwithstanding he surrendered the billing and entered into a new contract at Cairo, Illinois, to the end of completing the transportation. The shipment involved is interstate in character and falls within the purview of the Interstate Commerce Law. Because of this, it should be said of the suggestion above put forward that the rate duly fixed, approved and promulgated by the commission and posted by defendant is not the subject of contract at all but instead is fixed and determined by force of the law. So much has been pointedly determined by the Supreme Court of the United States. [Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242.] This being true, the contract for a lesser rate than that fixed by the Interstate Commerce Commission, whether intentionally or mistakenly made by the Big Four agent at Patton, Illinois, is of no force or effect and defendant is entitled to retain the goods, notwithstanding, until the true and lawful rate is paid. Such is the course of decision now well established. [See Gerber v. Wabash R. Co., 63 Mo. App. 145; Chicago, etc., R. R. v. Hubbell, 54 Kan. 232; see, also, Drey, etc., Glass Co. v. Mo. Pac. R. Co., 156 Mo. App. 176, 136 S. W. 757.]

In no view is plaintiff entitled to recover, and the judgment should therefore be reversed and the cause remanded with directions to the trial court to proceed to reinstate defendant's rights. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.